UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------- X
JUAN MARTINEZ ROMERO,                             :
                                                  :
                    Plaintiff,                    :
                                                  :
        -against-                                 :
                                                  :
RUNG CHAROEN SUB, INC. d/b/a 8 Paet Rio,          :
PHIMPLOY LIKITSANSOOK, KRITIKAR                   :
SAVAPHAPSAKUL,                                    :
                                                  :
                    Defendants.                   :
                                                  :
--------------------------------------------------------- X

**FINDINGS OF FACT AND
CONCLUSIONS OF LAW WITH
MEMORANDUM AND ORDER**

16 Civ. 1239 (VMS)

**Vera M. Scanlon, United States Magistrate Judge:**

Plaintiff Juan Martinez Romero ("Plaintiff") brings this action against Defendants Rung

Charoen Sub, Inc. (d/b/a 8 Paet Rio) ("8 Paet Rio" or "Corporate Defendant"), Phimploy

Likitsansook and Kritikar Savaphapsakul (collectively, "Defendants")[1] on behalf of himself and

others similarly situated pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq.

("FLSA"), and the New York Labor Law, N.Y. Lab. Law §§ 650 et seq. ("NYLL"), as amended

by the Wage Theft Prevention Act, N.Y. Lab. Law § 195 ("WTPA").[2] See generally Complaint,

ECF No. 1.  Plaintiff alleges that Defendants violated the minimum wage and overtime

provisions of the FLSA and NYLL, id. ¶¶ 85-104; as well as the spread-of-hours wage order of

the New York Commissioner of Labor, id. ¶¶ 105-08; the notice and recordkeeping requirements

of the NYLL, id. ¶¶ 109-11; and the wage statement provisions of the NYLL, id. ¶¶ 112-14.

Plaintiff seeks to recover allegedly unpaid minimum wages and overtime compensation,

---

[1]  As discussed below, Kritikar Savaphapsakul was dismissed from this action following the
bench trial on October 21, 2016, so she is no longer a defendant in this action.

[2]  Although this action was initially brought as a class action on behalf of Plaintiff and others
similarly situated, Plaintiff did not seek class certification.

damages for any improper deductions or credits taken against wages, liquidated damages, pre-judgment and post-judgment interest, attorneys' fees and costs.  Id. at 19-21.  The parties consented to this Court's jurisdiction, ECF No. 23, and a bench trial was held to determine Defendants' liability and damages, if any.  See Transcript of Civil Cause for Bench Trial Before the Honorable Vera M. Scanlon, ECF No. 26 ("Tr.").

Having held a bench trial, the Court now issues its findings of fact and conclusions of law, as required by Rule 52(a) of the Federal Rules of Civil Procedure.  The Court concludes, after carefully considering the evidence introduced at trial, the arguments of counsel, and the controlling law on the issues presented, that Defendants violated the overtime provisions of the NYLL and FLSA, and the spread-of-hours, notice and recordkeeping, and wage statement provisions of the NYLL.  Accordingly, the Court finds in favor of Plaintiff for a total damages award of $66,125.74 plus $6.92 per day from April 12, 2015 until the date judgment is entered in pre-judgment interest under the NYLL.  Plaintiff's remaining claims are denied except that Plaintiff's counsel may submit an application for attorney's fees and costs.

## I.   BACKGROUND

Plaintiff filed a complaint alleging violations of the FLSA and NYLL.  The parties consented to this Court's jurisdiction, ECF No. 23, and the Court held a bench trial.  At trial, Plaintiff testified on his own behalf and did not offer any additional witnesses.  See Tr. 21:22-47:16.

In lieu of direct testimony, Defendants provided, and the Court admitted, Tr. 16:13-23, the written declarations of (1) Defendant Phimploy Likitsansook, ECF No. 29 ("Phimploy Likitsansook Decl.") (2) Defendant Kritikar Savaphapsakul, ECF No. 32 ("Kritikar Savaphapsakul Decl."), and (3) non-party witness Napaporn Likitsansook, the daughter of

2

Defendant Phimploy Likitsansook, ECF No. 31 ("Napaporn Likitsansook Decl.").  Each of those

witnesses was cross-examined by Plaintiff's counsel.  Tr. 49:12-63:20 (Phimploy Likitsansook);

64:5-69:2 (Kritikar Savaphapsakul); 69:13-74:15 (Napaporn Likitsansook).

The parties stipulated to the admission of New York State and local sales and use tax

returns for the periods December 1, 2013 through November 30, 2015 (Defendants' Exhibit A); a

1099-K of the Corporate Defendant (Defendants' Exhibit B); and the pay stubs Plaintiff received

from 8 Paet Rio (Plaintiff's Exhibit 1 & Defendants' Exhibit C).  Tr. 13:20-15:4.

The parties also stipulated to the following facts and conclusions of law:

1) Plaintiff was an employee of 8 Paet Rio.  Tr. 19:11-12.

2) Defendant Phimploy Likitsansook, the principal of 8 Paet Rio, is an FLSA

employer.  Tr. 19:11-13; Phimploy Likitsansook Decl. ¶ 1.

3) Plaintiff began work at 11 a.m. on the days that he worked at 8 Paet Rio.  Tr.

19:13-15.

4) Plaintiff never received a wage notice in writing at the beginning of his

employment or upon a change in payment rates. Tr. 19:15-17.

5) Plaintiff never received a wage statement in the form required by Section 195 of

the NYLL. Tr. 19:15-19; 20:13-16.

6) Plaintiff was paid $100 per day for each day he worked.  Tr. 19:19-21.

7) Plaintiff was paid by a combination of cash and check.  Id.

8) For every day Plaintiff worked, he was entitled to spread-of-hours pay.  Tr. 19:21-

23.

Following the presentation of evidence at trial, Defendant Kritikar Savaphapsakul was

dismissed from the case on the basis that Plaintiff failed to establish that she was an employer

under the FLSA or the NYLL.  Tr. 74:21-25.  The Court reserved decision on the remaining issues until after the submission of the parties' post-trial proposed findings of fact and conclusions of law.  Tr. 75:1-14.

The following is an outline of the relevant testimony presented at trial.

### a.  Dates of Employment

At trial, Plaintiff testified that he began working at 8 Paet Rio in late June of 2014.  Tr. 26:3-6.  Defendants, however, testified that 8 Paet Rio did not open for business until September 2014,  Phimploy Likitsansook Decl. ¶ 5, and that Plaintiff did not start working there[3] until September 2014 when the restaurant opened.  Id. ¶ 10.

Plaintiff testified that he worked at 8 Paet Rio until approximately November 20, 2015, which is consistent with the testimony of Defendant Phimploy Likitsansook.  Tr. 33:14-15; Phimploy Likitsansook Decl. ¶ 10.

### b.  Days Per Week

Plaintiff testified that he generally worked seven days per week unless he was sick.  Tr. 25:21-23; 26:18-24.  Defendant Phimploy Likitsansook, her daughter Napaporn Likitsansook, and Defendant Kritikar Savaphapsakul each testified that "[w]hile Romero was working at 8 Paet Rio, he worked for five or six days per week . . . ,"  Phimploy Likitsansook Decl. ¶ 11; Napaporn Likitsansook Decl. ¶ 10; Kritikar Savaphapsakul Decl. ¶ 11.  Defendants' witnesses testified that Plaintiff only "occasionally worked for 7 days per week."  Phimploy Likitsansook Decl. ¶ 12; Napaporn Likitsansook Decl. ¶ 11; Kritikar Savaphapsakul Decl. ¶ 12.

---

[3] Defendant Phimploy Likitsansook declared that Plaintiff worked at "Rain Thai" but the restaurant at issue in this case is known as 8 Paet Rio.  Phimploy Likitsansook Decl. ¶ 10. Because the parties stipulated that Plaintiff was an employee of 8 Paet Rio, Tr. 19:11-13, the Court assumes that the reference to "Rain Thai" in the declaration of Phimploy Likitsansook is an error.

### c. Hours Per Day

Plaintiff testified that for the first year of his employment, he worked until one o'clock in the morning two or three times per week, Tr. 26:12-14, and until midnight three or four times per week, Tr. 26:15-17.  He testified that after about a year, he worked only to 11:30 p.m. or 11:15 p.m. each day until the end of his employment.  Tr. 27:1-7.  Plaintiff further testified that he received no breaks during the work day, Tr. 32:16-23, but that he spent ten to fifteen minutes eating during his shift.  Tr. 44:20-23.

Defendant Phimploy Likitsansook testified that Plaintiff usually left at or before 11 p.m.; Tr. 63:7-9.  Phimploy Likitsansook Decl. ¶ 13.  She further testified that 8 Paet Rio opens every day at 11 a.m and closes every day at 11 p.m., Phimploy Likitsansook Decl. ¶ 4, and that she personally closed the restaurant at 11 p.m. every day after cleaning the dining room, id. ¶ 6.

Defendant Kritikar Savaphapsakul testified that Plaintiff "usually departed from work at or before 11 p.m."  Kritikar Savaphapsakul Decl. ¶ 13.  Defendants' witness Napaporn Likitsansook, the daughter of Phimploy Likitsansook, testified that Plaintiff always departed work before 11 pm "with no exception."  Napaporn Likitsansook Decl. ¶ 12.  On cross, she admitted that she did not keep track of the exact time Plaintiff left but was certain that it was before 11:30 p.m.  Tr. 74:5-10.

### d. Work Performed

Plaintiff testified that he was hired as a delivery person, but that upon starting work at 8 Paet Rio, he was given additional tasks to complete.  Tr. 24:25-25:1; 27:18-28:10.  He testified that he typically handled about ten to twelve deliveries each day and spent about four or five hours handling deliveries.  Tr. 33:2-6.  During the remaining hours, Plaintiff testified, he cut

meat and vegetables, washed dishes, cleaned seafood and cleaned the kitchen.  Tr. 27:18-22; 33:7-13.  He testified that he was busy even when the restaurant was not.  Tr. 44:24-45:2.

Plaintiff testified that on the days he worked past 11 p.m., he was generally waiting for Phimploy Likitsansook to finish cooking so he could clean the kitchen.  Tr. 27:8-17.  Defendants' witness Napaporn Likitsansook testified that her mother, Phimploy Likitsansook, was "always the one doing the cleaning and there was no reason for Romero to remain."  Napaporn Likitsansook Decl. ¶ 13.

## II.    BURDEN OF PROOF

A plaintiff typically bears the burden of demonstrating the number of hours that he worked.  See Kim v. Kum Gang, Inc., No. 12 Civ. 6344 (MHD), 2015 WL 2222438, at *23 (S.D.N.Y. Mar. 19, 2015).  Nevertheless, the employer is required to maintain records of wages and hours, and if he fails to do so, a plaintiff "will not be penalized due to [his] employer's record-keeping default."  Reich v. S. New England Telecomm. Corp., 121 F.3d 58, 69 (2d Cir. 1997) (citing Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687 (1946)); see Yu Y. Ho v. Sim Enters., Inc., 2014 WL 1998237, *14 * (S.D.N.Y. May 14, 2014).  In such a circumstance, the plaintiff "need only prove that [he] performed work for which [he was] not properly compensated and produce 'sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.'"  Reich, 121 F.3d at 69 (quoting Anderson, 328 U.S. at 687).

To this end, a plaintiff may meet his burden of proof by testifying as to his own recollection in the absence of required employer record-keeping.  See, e.g., Anderson, 328 U.S. at 687-88; Kuebel v. Black & Decker Inc., 643 F.3d 352, 362 (2d Cir. 2011) ("It is well settled among the district courts of this Circuit, and we agree, that it is possible for a plaintiff to meet

this burden through estimates based on his own recollection."); Doo Nam Yang v. ACBL Corp.,

427 F. Supp. 2d 327, 335 (S.D.N.Y. 2005).  In the face of such testimony, which will

presumptively establish the fact of a violation and injury, Reich, 121 F.3d at 69, the burden shifts

to the employer "to come forward with evidence of the precise amount of work performed or

with evidence to negative the reasonableness of the inference to be drawn from the employee's

evidence." Id. (quoting Anderson, 328 U.S. at 687-88).  If the employer fails to meet that

burden, "the court may award damages, even though the result is only approximate."  Reich, 121

F.3d at 69 (citing Anderson, 328 U.S. at 688); see Hart v. Rick's Cabaret Intern., Inc., 73 F.

Supp. 3d 382, 390 (S.D.N.Y. Dec. 17, 2014) ("As the Court has explained, once liability for

wage violations has been established, '[t]he uncertainty lies only in the amount of damages

arising from the statutory violation by the employer.  In such a case it would be a perversion of

fundamental principles of justice to deny all relief to the injured person, and thereby relieve the

wrongdoer from making any amends for his acts.'" (quoting Anderson, 328 U.S. at 688)).

Although a plaintiff's testimony regarding his recollection alone may be sufficient to

establish a rebuttable presumption that he worked certain hours for which he was not

compensated, such testimony only establishes such a presumption if the testimony is credible.

See Daniels v. 1710 Realty LLC, 11 Civ. 3674, 497 Fed. App'x. 137 (2d Cir. 2012) (affirming

the district court's determination that plaintiff did not meet his burden under Anderson where the

evidence he presented was not credible).  Part of the role of the trial court in creating a finding of

fact is determining how much weight to afford any given witness's testimony, and whether or not

witnesses are credible.  See Krist v. Kolombos Rest., Inc., 688 F.3d 89, 95 (2d Cir. 2012) (in a

bench trial, "[i]t is within the province of the district court as the trier of fact to decide whose

testimony should be credited"); Newman v. Herbst, No. 09 Civ. 4313 (TLM), 2011 WL 684165,

7

at *1 (E.D.N.Y. Feb.15, 2011) ("In any bench trial, the trial judge has to evaluate the credibility of the witnesses that testify, the witnesses' demeanor, any previous inconsistent statements by a witness, as well as the witness's explanation for any such inconsistent statements.").

The same burden-shifting framework applies under both the FLSA and the NYLL. Canelas v. World Pizza, Inc., No. 14 Civ. 7748 (ER), 2017 WL 1233998, at *9 (S.D.N.Y. Mar. 31, 2017). To the extent the Court determines that Defendants are liable under both statutes, Plaintiff may recover under whichever statute provides the greater relief. See Romero v. Anjdev Enterps., Inc., No. 14 Civ. 457 (AT), 2017 WL 548216, at *10 (S.D.N.Y. Feb. 10, 2017).

## III.   FINDINGS OF FACT

The following section constitutes the Court's Findings of fact pursuant to Federal Rule of Civil Procedure 52(a)(1). These Findings of Fact are drawn from witness testimony at trial, witness declarations admitted in lieu of direct testimony at trial, the parties' trial exhibits, and the undisputed facts to which the parties stipulated, which are discussed above in Section I.

### a.  Employment

The Court finds that Plaintiff was an employee of 8 Paet Rio, Tr. 19:11-12, a Thai restaurant owned and operated by Defendant Phimploy Likitsansook. Tr. 23:17-18; 24:4-7.

### b.  Dates of Employment

The Court finds that Plaintiff began working at 8 Paet Rio in September 2014. Although Plaintiff testified that he began working at 8 Paet Rio in late June of 2014, Tr. 26:3-6, he also testified that he began working at 8 Paet Rio very shortly after it opened, and could not recall the date 8 Paet Rio opened for business. Tr. 38:24-39:3.

Defendant Phimploy Likitsansook testified that 8 Paet Rio opened in September 2014 and that Plaintiff began working there in September 2014. Phimploy Likitsansook Decl. ¶¶ 5, 10.

8

As the owner of the business, Defendant Phimploy Likitsansook was a very credible witness as to the opening date of her own business, at which she regularly works.  Defendant Phimploy Likitsansook's testimony regarding the date Plaintiff began work at 8 Paet Rio is consistent with the pay stubs submitted to the Court.  <u>See</u> Pl. Ex. 1.  Plaintiff testified that Plaintiff's Exhibit 1 includes all the pay stubs he ever received from 8 Paet Rio.  Tr. 29:7-30:7; 32:4-7.  The first pay stub in Plaintiff's Exhibit 1 was for the pay period beginning on October 13, 2014.  Pl. Ex. 1.  Although Plaintiff testified that he was paid entirely in cash on several occasions and therefore received no pay stub, he testified that this occurred a maximum of nine times.  Tr. 47:2-9.  Therefore, even if Plaintiff had been paid entirely in cash for nine weeks before the October 13, 2014 pay period, his earliest possible start date would be in August 2014.  Accordingly, the Court finds that Defendants presented sufficient evidence to rebut the presumption established by Plaintiff's testimony that he started working at 8 Paet Rio in June 2014, and finds instead that Plaintiff began working in September 2014, when the restaurant first opened for business.

In addition, the Court finds, and the parties do not appear to dispute, that Plaintiff worked at 8 Paet Rio until approximately November 20, 2015.  Tr. 33:14-15; Phimploy Likitsansook Decl. ¶ 10.

Plaintiff did not work every week during the period of his employment, and he was not paid for the weeks he did not work.  Phimploy Likitsansook Decl. ¶¶ 10, 17.  Because Plaintiff testified that (1) he was paid for every week that he worked, Tr. 46:20-22, (2) the 37 weekly pay stubs submitted to the Court reflect all of the checks he received, <u>see</u> Pl. Ex. 1; Tr. 29:7-30:7; 32:4-7, and (3) he was paid his full weekly wages in cash a maximum of nine times, Tr. 47:2-9, the Court finds that Plaintiff worked for 8 Paet Rio for a total of 46 weeks during the period between September 2014 and November 20, 2015.

9

### c.  Work Performed

The Court finds that Plaintiff spent four or five hours of a typical work day delivering food to customers and the rest of his time on a typical work day doing other activities such as chopping meat and vegetables, and cleaning the kitchen.  Tr. 33:7-13.

### d.  Records

The Court finds that Defendants did not keep complete or accurate records of Plaintiff's hours worked.  Plaintiff was typically paid by a combination of cash and check.  Tr. 19:19-21.  Each check Plaintiff received was accompanied by a pay stub reflecting payments made by check.  See Def. Ex. C; Pl. Ex. 1.  Upon close review of testimony and the documents, the Court determines that those pay stubs are incomplete and inaccurate, as they (1) do not reflect Plaintiff's actual gross pay, including the additional cash payments that were made to Plaintiff,[4] (2) do not reflect Plaintiff's true hourly rate, and (3) do not reflect the actual total hours worked by Plaintiff during each pay period.  Compare Tr. 19:19-21 (stipulating that Plaintiff was paid $100 a day in a combination of cash and check) with Pl. Ex. 1 (pay stubs); see also Tr. 20:4-6 (where Defendants' counsel acknowledged that the pay stubs "may not be very accurate").

### e.  Weekly Hours Worked

#### i.  Days Per Week

The parties dispute the number of days Plaintiff typically worked each week.  See Section I(b), supra.  Neither side's witnesses' recollection of the number of days Plaintiff worked each

---

[4] The pay stubs are inconsistent with the stipulation of the parties that Plaintiff was paid $100 per day.  See Pl. Ex. 1; Tr. 19:19-21.  The pay stubs indicate that Plaintiff's take-home pay was $100 per day, but that he was actually paid a gross amount that was greater than $100 per day.  The parties did not address this issue at trial and simply stipulated that Plaintiff was paid $100 per day.  Tr. 19:19-21.  Accordingly, the Court accepts the stipulation of the parties that Defendants paid Plaintiff $100 per day.

week was definitive.  Plaintiff's position that he worked seven days per week, Tr. 25:21-26:24, and Defendants' position that Plaintiff typically worked five to six days per week and only occasionally worked seven days per week, see Phimploy Likitsansook Decl. ¶¶ 11-12, are not consistent with the documentary evidence.  See generally Pl. Ex. 1.  The Court looks to the documentary evidence to help resolve the dispute.  Twenty of the pay stubs Plaintiff submitted to the Court contain handwritten calculations indicating the amount paid by cash in addition to the amount paid by check.  See Pl. Ex. 1; Tr. 31:19-32:3.  Of those 20 pay stubs, 17 contain calculations that are consistent with Plaintiff's testimony that the handwritten calculation shows the total amount Plaintiff received, reflecting $100 net per day times the number of days worked that week.[5]  Tr. 31:19-32:3.  Of those 17 pay stubs, 10 pay stubs indicate that Plaintiff was paid a total of $700 for the week (Pl. Ex. 1 at Plaintiff000003, Plaintiff000023, Plaintiff000029-36), four pay stubs indicate that Plaintiff was paid $600 for the week (Pl. Ex. 1 at Plaintiff000006, Plaintiff000011, Plaintiff000028, Plaintiff000037), and three pay stubs indicate that Plaintiff was paid $500 for the week (Pl. Ex. 1 at Plaintiff000025, Plaintiff000027, Plaintiff000038).  These pay stubs suggest that Plaintiff often worked seven days per week, sometimes worked six days per week, and sometimes worked five days per week.  The Court uses the distribution of the days worked as reflected in these pay stubs as an approximation of the number of days Plaintiff worked each week.  Accordingly, the Court finds that Plaintiff worked seven days per week for about 23 of the 46 weeks he worked, worked six days per week for about 12 of the 46 weeks he worked, and worked five days per week for about 11 of the 46 weeks he worked.

---

[5] The remaining three pay stubs contain handwritten numbers that do not seem to conform to this formula.  See Pl. Ex. 1 at Plaintif00005, Plaintiff000024, and Plaintiff000026.

### ii.  Daily Start and End Times

The parties agree that Plaintiff began work at 11 a.m. on the days that he worked.  Tr. 19:13-15.

The parties disagree as to when Plaintiff finished work each day.  The Court finds that Plaintiff typically left work at around 11 p.m.

Plaintiff testified that when he was first hired, he was told he would be working from 11:00 a.m. to 11:00 p.m, Tr. 25:12-14, but that during the first year of his employment, he worked until midnight three or four times per week, Tr. 26:15-17, and until 1 a.m. two or three times per week, Tr. 26:12-14.  The Court did not find Plaintiff's testimony regarding his hours worked to be credible.  Plaintiff's testimony was greatly undermined by the facts testified to by witnesses that the restaurant closed at 11:00 pm each night and was not busy.  Tr. 50:9-11; 51:3-4; 45:1-2; Napaporn Likitsansook Decl.  ¶ 4; Phimploy Likitsansook Decl.  ¶ 4.  Plaintiff acknowledged the slow pace of business, Tr. 45:1-2, and he did not offer evidence that contradicted the closing time of the restaurant, see Tr. 44:7-15.

At trial, Plaintiff appeared to the Court to exaggerate his hours purposefully.  For example, he testified that when he left the restaurant in the early morning hours at about 1 a.m., he saw that the restaurant was still open and customers were still at the restaurant, which was inconsistent with the hours of operation, the quiet location of the restaurant, and the testimony of other witnesses.  Tr. 42:7-15; 61:2-63:21.  Plaintiff's persistence in this line of answers casts doubt on his other testimony.

In addition, Plaintiff's reason for staying late was that he had to clean the kitchen after Phimploy Likitsansook had finished cooking, Tr. 27:8-13, but Phimploy Likitsansook and

Napaporn Likitsansook testified credibly that Phimploy Likitsansook cleaned the kitchen alone at night.  See Tr. 62:13-63:4; 71:7-12.

Both Phimploy Likitsansook and Kritikar Savaphapsakul testified that Plaintiff usually left at or before 11 p.m. Tr. 63:7-9; Phimploy Likitsansook Decl. ¶ 13; Kritikar Savaphapsakul Decl. ¶ 13.

Napaporn Likitsansook, the daughter of Phimploy Likitsansook, testified that before she started working at 8 Paet Rio in May or June 2015, she would sometimes visit the restaurant at around 11:30 p.m. to spend time with her mother, who would typically be closing up the restaurant, and that she never saw Plaintiff there.  Tr. 70:17-71:12; 72:23-73:17; Napaporn Likitsansook Decl. ¶ 6.  This clearly implies that Plaintiff had left before 11:30 p.m.  She further testified that when she began working at the restaurant in May or June 2015, Tr. 70:14-16, which was during Plaintiff's first year of employment, she typically worked from 11 a.m. to 11 p.m., after which she waited for her mother to close the restaurant before leaving at or after 11:30 p.m. Tr. 73:18-74:4.  Although she admitted she did not keep track of Plaintiff's exact departure time, she testified that it was always before 11:30 pm.  Tr. 74:7-10.  Napaporn Likitsansook appeared to be a particularly credible witness at trial.  Her manner at trial was forthcoming and she acknowledged when she lacked information, suggesting her testimony was not crafted to help her mother.  Accordingly, the Court finds her testimony regarding Plaintiff's departure time credible.

Based on the credible and consistent testimony of Defendants' three witnesses, who supported their testimony with reference to details about the business and their lives, the Court concludes that Plaintiff left work each day at around 11 p.m. when the restaurant closed.

### iii.   Breaks During the Day

The Court finds that Plaintiff typically took two 30-minute meal breaks plus one hour-long break each day he worked.  At trial, Plaintiff recalled that he was not able to take breaks during the work day, even though the restaurant was not busy because he still "had to do things." Tr. 32:16-23; 44:17-25; Tr. 45:1-2.  The Court does not find Plaintiff's testimony that he took no breaks and spent only ten to fifteen minutes eating during his shift, Tr. 44:20-23, which according to him lasted at least twelve hours, Tr. 26:7-27:7, to be credible, particularly given his admission that the restaurant was not busy, see Tr. 45:1-2, and his lack of details about what his duties were during these slow periods.

Defendants' position is that all employees, including Plaintiff, were provided with two meal breaks every day at 3 p.m. and 10 p.m., each of which lasted at least 30 minutes.  Phimploy Likitsansook Decl.  ¶¶ 14-15.  Defendant Phimploy Likitsansook further testified that employees "usually have one hour, sometimes two-hour break in the afternoon" and that Plaintiff usually took his break between 3 p.m. and 4 p.m.  Phimploy Likitsansook Decl.  ¶ 16.  On cross-examination, Defendant Phimploy Likitsansook acknowledged that she did not track her employees' breaks and did not know exactly how much time her employees spent taking meal breaks.  Tr. 59:4-15.

Kritikar Savaphapsakul, who worked at the restaurant alongside Plaintiff, testified that she typically took two 30-minute meal breaks while working at the restaurant.  See Tr. 67:20-25. She recalled that Plaintiff also typically took 30-minute meal breaks as well, although she, too, admitted that she did not actually track Plaintiff's breaks.  Tr. 66:15-67:25.  Kritikar Savaphapsakul was not asked about any other breaks she or any other employees may have taken during a typical work day.

14

The Court finds Kritikar Savaphapsakul's testimony to credible with respect to the time Plaintiff spent taking meal breaks.  Although Kritikar Savaphapsakul acknowledged she did not actually track Plaintiff's breaks, she had reason to know the breaks the employees took on a daily basis given that she was an employee who worked alongside Plaintiff, and took two 30-minute meal breaks each day herself.  See Tr. 67:20-25.

In light of the testimony regarding Plaintiff's breaks described above, and Plaintiff's testimony that the restaurant was generally not busy during Plaintiff's employment, see Tr. 45:1-2, the Court finds that Plaintiff typically took two 30-minute meal breaks plus one hour-long break starting between 3 p.m. and 4 p.m.

### iv.  Total Hours Worked Per Week

As discussed above, the Court finds that Plaintiff frequently worked seven days a week from 11 a.m. to 11 p.m. with two 30-minute breaks and one hour-long break during the work day, and sometimes worked five or six days a week from 11 a.m. to 11 p.m. with two 30-minute breaks and one hour-long break during the work day.  See Section III, supra.  Accordingly, the Court finds that Plaintiff frequently worked for a total of 70 hours per week and sometimes worked a total of 50 or 60 hours per week.

### f.  Compensation

There was very little evidence offered about Plaintiff's compensation.  At trial, the parties stipulated that Plaintiff was paid $100 for each day that he worked, and that he was paid once each week by a combination of cash and check.  Tr. 19:19-21; 29:5-12.

The record is not clear as to whether the $100 daily rate was a fixed daily rate or an amount calculated based on a regular hourly rate and a fixed daily schedule.  Defendant Phimploy Likitsansook testified that Plaintiff was paid minimum wage and that anything

15

additional was intended to cover Plaintiff's overtime hours.  Phimploy Likitsansook Decl. ¶ 21 ("Romero's hourly rate is $8 in 2014 and $8.75 in 2015, but I always paid him enough to cover his overtime, if there is any.").  Plaintiff received pay stubs for most weeks he worked starting in October 2014, which indicated hourly rates consistent with Defendant Phimploy Likitsansook's testimony ($8.00 at first, and later $8.75 following the increase in the minimum wage rate in 2015).  See generally Pl. Ex. 1.  As discussed above, those pay stubs were inaccurate in many respects and did not correctly reflect the number of hours Plaintiff worked or the total amount Plaintiff was paid.  See Section III(d), supra.

In their post-trial proposed findings of fact, however, Defendants appeared to abandon the theory that the $100 daily rate was based on the minimum wage plus additional money intended to cover overtime premiums.  Instead, Defendants confirmed their stipulation that Plaintiff was paid $100 per day without offering any hourly basis for the $100 daily rate.  See Defendants' Proposed Findings of Fact and Conclusions of Law, ECF No. 28, at 4 ¶ 9 ("There is no dispute that Plaintiff was paid $100 per workday.").[6]

Plaintiff testified only that he was paid $100 per day, and he was not asked whether that daily rate was based on an hourly rate.  Tr. 29:7-9.  There is no evidence that Plaintiff's pay was ever adjusted in the event he ever worked more or fewer than ten hours per day, and there is no evidence that Plaintiff's daily rate of $100 changed when the minimum wage rate changed in 2015.

---

[6] Separately, in their proposed conclusions of law, Defendants stated that "Plaintiff's regular rate of pay was $10 per hour."  Defendants' Proposed Findings of Fact and Conclusions of Law, ECF No. 28, at 5 ¶ 1.  That proposed conclusion of law is not based on evidence in the record that Plaintiff was paid on an hourly basis; rather it is based on Defendants' assumption that Plaintiff's hourly rate is to be "computed by dividing total weekly wage received by total hours worked." Id.

In light of the parties' stipulation that Plaintiff was paid a daily rate of $100 per day, and the lack of evidence in the record that would demonstrate an hourly basis for that fixed daily amount, the Court is constrained by the limited record to find that Plaintiff was paid on a daily—rather than hourly—basis.[7]

## IV.    CONCLUSIONS OF LAW

### a.   Jurisdiction

This Court has subject matter jurisdiction of this action with respect to the claims made by the plaintiff under the FLSA pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. §§ 1331 and 1337. The claims arising under New York law are so related to the claims under the FLSA that they form part of the same case or controversy, and thus fall under the supplemental jurisdiction of the Court as defined in 28 U.S.C. § 1367(a).

### b.   Joint and Several Liability

The parties stipulate that Defendant Phimploy Likitsansook was Plaintiff's employer under the FLSA.  Tr. 19:11-13.  "[D]istrict courts in this Circuit have consistently interpreted the definition of 'employer' under the New York Labor Law coextensively with the definition used by the FLSA."  Ho v. Sim Enters. Inc., No. 11 Civ. 2855, 2014 WL 1998237, at *10 (S.D.N.Y. May 14, 2014); Inclan v. New York Hosp. Grp., Inc., 95 F. Supp. 3d 490, 511 (S.D.N.Y. 2015).

---

[7] The parties also stipulated that Plaintiff was entitled to spread-of-hours pay for every day he worked, Tr. 19:21-23, meaning that the period between the time he started work and the time he ended work each day, including breaks, exceeded ten hours.  See 12 N.Y.C.R.R. § 146-1.6. Under New York law, only minimum wage workers are entitled to spread-of-hours.  See Guadalupe v. Tri–State Emp't, Mgmt. & Consulting, Inc., No. 10-Civ-3840 (NG) (CLP), 2013 WL 4547242, at *12-13 (E.D.N.Y. Aug. 28, 2013) (citing to NYSDOL opinion letters stating this prerequisite).  Because Plaintiff was paid more than minimum wage, he was not entitled to spread-of-hours pay as a matter of law.  Nonetheless, the Court will include Defendants' concession in its calculations.

Accordingly, the Court concludes that Defendant Phimploy Likitsansook was also Plaintiff's employer under the NYLL.

The parties also stipulate that Plaintiff was an employee of 8 Paet Rio.  Tr. 19:11-13. Where both an individual and a business are considered employers under the FLSA and/or NYLL, they are jointly and severally liable for any judgment resulting from a plaintiff's claims under those statutes.  Inclan, 95 F. Supp. 3d at 511.  Here, because both 8 Paet Rio and Phimploy Likitsansook are considered Plaintiff's employers within the meaning of the NYLL and FLSA, they are jointly and severally liable from any judgment resulting from Plaintiff's claims in this action.  See id.

### c.  Records and Wage Statements

The Court concludes that Defendants failed to make, keep, and preserve accurate records of wages paid to and hours worked by their employees, including the number of hours worked each day, the total number of hours worked each work week, the regular rate of pay, the basis upon which wages were paid, the total earnings for each work week, and the total overtime compensation paid for each work week, as required by the NYLL.  See N.Y. Lab. Law § 195; N.Y. Comp. Codes R. & Regs. tit. 12, § 146-2.1 (requiring employers to maintain and preserve for at least six years weekly payroll records that show the amount of gross wages, money paid in cash, and the number of hours worked daily and weekly, including the time of arrival and departure for each employee working a split shift or spread of hours exceeding 10, among other requirements).

In addition, Defendants failed to provide proper wage statements as required by the NYLL.  See N.Y. Lab. Law § 195(3); N.Y. Comp. Codes R. & Regs. tit. 12, § 146-2.3 ("Every employer shall provide to each employee a statement, commonly referred to as a pay stub, with

every payment of wages. The pay stub must list hours worked, rates paid, gross wages, credits claimed (for tips, meals and lodging) if any, deductions and net wages.").  As discussed in Section III(d), supra, Defendants did make records of payments made by check, but those records did not accurately reflect the total number of hours worked by Plaintiff received.  Those records are insufficient to satisfy the requirements of the NYLL.  See Moon v. Kwon, 248 F. Supp. 2d 201, 219 (S.D.N.Y. 2002) (concluding that a hotel's payroll records were inadequate under both the FLSA and NYLL because, among other things, they failed to reflect certain cash payments and indicated compensation for a regular work schedule of 40 hours per week, rather than the employee's actual schedule of 60 or 48 hours per week).

### d.  Unpaid Wages

The FLSA and NYLL require that an employee be paid a minimum wage.  See 29 U.S.C. § 206; N.Y. Lab. Law § 652.  The New York minimum wage rate for employees not eligible to be paid at the tipped minimum wage rate[8] was $8.00 per hour from December 31, 2013 through December 30, 2014, and $8.75 from December 31, 2014 through the end of Plaintiff's employment in November 2015.  See N.Y. Lab. Law. § 652(1); 12 N.Y.C.R.R. § 146-1.3.  In addition, both federal and New York state law require employers to pay for hours worked in excess of 40 hours per week "at a rate not less than one and one-half times the regular rate at which he is employed."  29 U.S.C. § 207(a)(1); N.Y.C.C.R.R. § 142-2.2 (incorporating the FLSA definition of overtime into the NYLL).

---

[8] Plaintiff was not eligible to be paid at the tipped minimum wage rate because he worked at a non-tipped occupation for more than two hours and more than 20 percent of his time on a typical work day.  See Section III(d) (citing Tr. 33:7-13); N.Y. Comp. Codes R. & Regs. tit. 12, § 146-2.9.

Pursuant to New York regulations that govern the hospitality industry, which includes restaurants, "Employers may not pay employees on a daily, weekly, salary, piece rate or other non-hourly basis."  12 N.Y.C.R.R. § 146-2.5.   "If an employer fails to pay an employee an hourly rate of pay, the employee's regular hourly rate of pay shall be calculated by dividing the employee's total weekly earnings, not including exclusions from the regular rate, by the lesser of 40 hours or the actual number of hours worked by that employee during the work week."  12 N.Y.C.R.R. § 146-3.5.

As discussed above, see Section III(f), supra, Defendants paid Plaintiff on a daily rather than hourly basis.  Accordingly, the Court must determine Plaintiff's regular hourly and overtime rates under the NYLL by dividing Plaintiff's total weekly earnings by 40 hours per week (which is less than the hours he worked in any given week).[9]  See 12 N.Y.C.R.R. § 146-3.5.  For weeks in which Plaintiff worked five days, he was paid $500; for weeks in which Plaintiff worked six days, he was paid $600; and for weeks in which Plaintiff worked seven days, he was paid $700.  See Tr. 19:19-21.  Therefore, for the weeks in which Plaintiff worked five days, he was paid a regular hourly wage of $12.50 per hour ($500/40); for the weeks in which Plaintiff worked six days, he was paid a regular hourly wage of $15 per hour ($600/40); and for the weeks in which Plaintiff worked seven days, he was paid a regular hourly wage of $17.50 per hour ($700/40).  Because each of these regular hourly rates is greater than the minimum wage during Plaintiff's employment, Defendants did not violate the minimum wage provisions of the NYLL or FLSA.

---

[9] The Court determines the regular rate of pay based on the $100 daily rate stipulated to by Plaintiff's and Defendants' counsel, and Defendants did not offer any factual basis to exclude any portion of the $100 per day from the calculation of the regular daily rate as is permitted under 12 N.Y.C.R.R. § 146-3.5 for certain kinds of payments.

Because the regular rates of pay under the NYLL are calculated by dividing Plaintiff's total weekly earnings by 40 hours per week, Plaintiff's total weekly earnings necessarily do not include overtime premiums.  Accordingly, Defendants violated the overtime provisions of the NYLL.

Under the FLSA, the regular hourly rate of pay, on which time and a half must be paid, is computed by dividing the salary by the number of hours which the salary is intended to compensate." 29 C.F.R. § 778.113 (2016); see also 29 C.F.R. § 778.325 (2016). "For purposes of FLSA, '[t]here is a rebuttable presumption that a weekly salary covers 40 hours; the employer can rebut the presumption by showing an employer-employee agreement that the salary cover a different number of hours.'" Moon v. Kwon, 248 F. Supp. 2d 201, 207 (S.D.N.Y. 2002) (quoting Giles v. City of New York, 41 F. Supp. 2d 308, 317 (S.D.N.Y. 1999)).

If Plaintiff's total weekly earnings were understood by all parties to cover between 50 and 70 hours each week depending on the number of days worked, Defendants would owe Plaintiff overtime premiums under the FLSA for the hours worked each week in excess of 40. See 29 C.F.R. § 778.112 ("If the employee is paid a flat sum for a day's work or for doing a particular job, without regard to the number of hours worked in the day or at the job, and if he receives no other form of compensation for services, his regular rate is determined by totaling all the sums received at such day rates or job rates in the workweek and dividing by the total hours actually worked.  He is then entitled to extra half-time pay at this rate for all hours worked in excess of 40 in the workweek." (emphasis added)); see also 29 C.F.R. § 778.325 ("If an employee whose maximum hours standard is 40 hours was hired at a fixed salary of $275 for 55 hours of work, he was entitled to a statutory overtime premium for the 15 hours in excess of 40 at the rate of $2.50 per hour (half-time) in addition to his salary, and to statutory overtime pay of

21

$7.50 per hour (time and one-half) for any hours worked in excess of 55.").  Therefore, the Court concludes Defendants violated the overtime requirements of the FLSA.

The Court need not determine whether the presumption that Plaintiff's weekly salary covers 40 hours was rebutted by evidence that Plaintiff understood his weekly earnings to cover more than 40 hours each week, see Quiroz v. Luigi's Dolceria, Inc., No. 14 Civ. 871 (VVP), 2016 WL 2869780, at *4 (E.D.N.Y. May 17, 2016), because Plaintiff is entitled to recover under whichever statute provides greater relief, see Romero v. Anjdev Enterps., Inc., No. 14 Civ. 457 (AT), 2017 WL 548216, at *10 (S.D.N.Y. Feb. 10, 2017).  In this case, the relief provided by the FLSA would necessarily be equal to or less than the relief provided by the NYLL.

### e.  Spread-of-Hours Claim

Under the NYLL, an employee is entitled to an extra hour's pay at the minimum wage rate for any day for which "the spread of hours exceeds 10."  12 N.Y.C.R.R. § 146-1.6.  The parties in this case stipulated that Plaintiff was entitled to spread-of-hours pay.  Tr. 19:21-23.  They did not stipulate as to whether Plaintiff received the spread-of-hours pay to which he was entitled.  Because Plaintiff was paid a flat daily rate, the Court concludes that his weekly earnings did not include spread-of-hours pay.  Accordingly, Defendants violated the spread-of-hours requirement of the NYLL.

### f.  Notice Claim

During Plaintiff's employment, Section 195(1) of the NYLL required employers to provide employees with written notice of their pay rate and additional information in both English and the employee's principal language at the time of hiring and before February first of

each calendar year.[10]  See Kum Gang, No. 12 Civ. 6344 (MHD), 2015 WL 2222438, at *23.

Here, the parties stipulated that Plaintiff was never provided with any written notice of his pay

rate either when he was hired or when his pay rate changed.  Tr. 19:15-17.  Accordingly,

Defendants violated the notice provisions of the NYLL.

### g.  Damages

A party seeking damages "must prove the amount of damages by a preponderance of the

evidence."  See Solis, 938 F. Supp. 2d at 392.  In awarding damages, the Court is not limited to

the relief requested in the complaint, but rather may award any relief that it deems just and

proper.  See Fed. R. Civ. P. 54(c) (directing that aside from default judgments, "[e]very other

final judgment should grant the relief to which each party is entitled, even if the party has not

demanded that relief in its pleadings"); N.Y. C.P.L.R. § 3017(a) ("Except as provided in section

3215 [concerning default judgments], the court may grant any type of relief within its

jurisdiction appropriate to the proof whether or not demanded, imposing such terms as may be

just.").

### i.  Unpaid Wages

To calculate damages for violations of overtime provisions of the NYLL and/or FLSA,

the Court must compare what Plaintiff was entitled to be paid with what he was paid.  As

discussed above, Plaintiff's regular rate of pay for the weeks in which he worked five days must

be found to be $12.50 per hour; his regular rate of pay for the weeks in which he worked six days

must be found to be $15 per hour; and his regular rate of pay for the weeks in which he worked

---

[10] "Effective February 27, 2015, this statute was . . . amended, leaving all language unchanged
save for the removal of the annual February notice requirement . . . ."  Kum Gang, Inc., No. 12
Civ. 6344 (MHD), 2015 WL 2222438, at *30.

seven days must be found to be $17.50 per hour.  Therefore, his overtime rate for the weeks in which he worked five days is determined to be $18.75 per hour; his overtime rate for the weeks in which he worked six days is determined to be $22.50 per hour; and his overtime rate for the weeks in which he worked five days is determined to be $26.25 per hour.[11]  29 U.S.C. § 207(a)(1); N.Y.C.C.R.R. § 142-2.2.

Based on these rates, Plaintiff was entitled to the following amounts from the beginning of Plaintiff's employment in September 2014 through the end of Plaintiff's employment around November 20, 2015: (1) $500 in regular wages (40*$12.50) and $187.50 in overtime wages (10*$18.75) totaling $687.50 for weeks in which he worked five days, (2) $600 in regular wages (40*$15) and $450 in overtime wages (20*$22.50) totaling $1,050 for weeks in which he worked six days, and (3) $700 in regular wages (40*$17.50) and $787.50 in overtime wages (30*$26.25) totaling $1,487 for weeks in which he worked seven days.

---

[11] The Court reluctantly holds that it must apply the 40-hour-week rule set forth in 12 N.Y.C.R.R. 146-3.5(b) because of the stipulation between counsel that Plaintiff was paid $100 a day, providing both an amount and a daily (rather than hourly) rate practice, and because of the lack of information in the record to support the position that Plaintiff was paid on an hourly basis.  Given the economics of the restaurant—its small size, its limited busy hours, its location in a quiet neighborhood, its reliance on family labor—it is highly likely that Defendants intended to and did pay Plaintiff $10.00 per hour for each of the ten hours that he worked each day.  Although this was not legally sufficient pay as it did not include overtime premiums, it should have been obvious to Plaintiff that he was being paid on an hourly basis at $10.00 per hour based on simple math: $100 per day/10 hours = $10.00.  Neither he nor Defendants could have understood or intended Plaintiff to be paid the high hourly rates that application of 12 N.Y.C.R.R. 146-3.5(b) requires.  Unfortunately for Defendants, they did not rebut Plaintiff's testimony about the daily rate and did not offer any testimony to explain how the stipulation that Plaintiff was paid $100 a day is consistent with a finding of an hourly rate.  Defendants' post-trial submission proposing as a conclusion of law an hourly rate of $10.00 per hour based on application of a different formula cannot bridge the evidentiary gap between the stipulation that Plaintiff was paid $100 a day and Defendant Phimploy Likitsansook's testimony that Plaintiff was paid man hourly minimum wage as reflected on the (otherwise inaccurate) pay stubs.  The Court acknowledges that the bare state of the record and the application of 12 N.Y.C.R.R. 146-3.5(b) operate harshly against Defendants, and against any reasonable expectation Plaintiff had as to his wages.

For weeks Plaintiff worked five days, he received $500, which is $187.50 less than he should have received based on the above calculations.  For weeks Plaintiff worked six days, he received $600, which is $450 less than he should have received based on the above calculations. For weeks Plaintiff worked seven days, he received $700, which is $787.50 less than he should have received based on the above calculations.

As discussed above, of the 46 weeks that Plaintiff worked for Defendants, the Court finds that 23 were seven-day weeks, 12 were six-day weeks, and 11 were five-day weeks. Accordingly, Plaintiff is entitled to recover $2,062.50 for the 11 weeks he worked five days a week (11*$187.50); $5,400 for the 12 weeks he worked six days a week (12*$450); and $18,112.50 for the 23 weeks that he worked seven days a week (23*$787.50) for a total of $25,575 in unpaid overtime wages.

### ii.  Spread-of-Hours Pay

As discussed above, an employee is entitled to an extra hour's pay at the minimum wage rate for any day for which "the spread of hours exceeds 10."  12 N.Y.C.R.R. § 146-1.6.  The minimum wage rate was $8.00 per hour from December 31, 2013 through December 30, 2014, and $8.75 from December 31, 2014 through the end of Plaintiff's employment in November 2015.  See N.Y. Lab. L. § 652(1); 12 N.Y.C.R.R. § 146-1.3.  For purposes of calculating damages, the Court estimates that one-quarter of the 46 weeks Plaintiff worked were in 2014 and three-quarters were in 2015.  Therefore, the Court estimates that 11.5 weeks (one quarter of 46 weeks) took place in 2014 and 34.5 weeks (three quarters of 46 weeks) took place in 2015.  The Court applies the same approximated distribution of five-, six-, and seven-day work weeks to the weeks worked in 2014 and 2015.  Accordingly, based on the above calculations and findings of fact, the Court concludes that in addition to the amounts described in Section IV(g)(i), supra,

25

Defendants owe Plaintiff $110 for the weeks in 2014 in which Plaintiff worked five days (((11/46)*11.5)*(8*5)), $144 for the weeks in 2014 in which Plaintiff worked six days (((12/46)*11.5)*(8*6)), $322 for the weeks in 2014 in which Plaintiff worked seven days (((23/46)*11.5)*(8*7)), $382.81 for the weeks in 2015 in which Plaintiff worked five days (((11/46)*34.5)*(8.75*5)), $472.5 for the weeks in 2015 in which Plaintiff worked six days (((12/46)*34.5)*(8.75*6)), and $1,056.56 for the weeks in 2015 in which Plaintiff worked seven days (((23/46)*34.5)*(8.75*7)).  In total, Plaintiff is entitled to recover $2,487.87 in unpaid spread-of-hours pay.

### iii.  Wage-notice Violation

The NYLL entitles Plaintiff to recover statutory damages for violations of the wage-notice requirement of $50 per work day, not to exceed $5,000.  N.Y. Lab. Law § 198(1-b).  As discussed above, Defendants violated the wage-notice requirement of the NYLL.  See Section IV(f), supra.  Because Plaintiff worked for more than 100 days without receiving a proper wage notice, Plaintiff is entitled to $5,000, the statutory maximum, in statutory damages for Defendants' violation of the notice requirement.

### iv.  Wage-statement Violation

The NYLL entitles Plaintiff to recover statutory damages for violations of the wage-statement requirement of $250 per work day, not to exceed $5,000.  N.Y. Lab. Law § 198(1-d), As discussed above, Defendants violated the wage statement requirement of the NYLL by failing to provide Plaintiff with complete and accurate wage statements.  See Section IV(c), supra. Because Plaintiff worked for 8 Paet Rio for more than 20 days without receiving a proper wage statement, Plaintiff is entitled to $5,000, the statutory maximum, in statutory damages for Defendants' violation of the wage statement requirement.

26

### v.  Liquidated Damages

Under both the NYLL and the FLSA, an employee is entitled to recover liquidated damages unless the employer can establish a good-faith basis for having failed to pay the required wages.  See 29 U.S.C. § 260; N.Y. Lav. Law § 198(1-a); Fermin v. Las Delicias Peruanas Rest., Inc., 93 F. Supp. 3d 19, 47 (E.D.N.Y. 2015).  "[T]he employer bears the burden of establishing, by plain and substantial evidence, subjective good faith and objective reasonableness.  The burden . . . is a difficult one to meet, however, and double damages are the norm, single damages the exception."  Solis v. SCA Rest. Corp., 938 F. Supp. 2d 380, 403 (E.D.N.Y. 2013) (internal citations & quotation marks omitted).  "To establish 'good faith,' a defendant must produce 'plain and substantial evidence of at least an honest intention to ascertain what the Act requires and to comply with it.'"  Reich, 121 F.3d 58, 71 (2d Cir. 1997) (quoting Brock w. Wilamowsky, 833 F.2d 11, 19 (2d Cir. 1987)); see Herman, 172 F.3d at 142 ("To establish good faith, the employer must take active steps to ascertain the dictates of the [law] and then act to comply with them.").  In the event an employer does not demonstrate good faith, an employee is entitled to recover liquidated damages under NYLL up to 100% of the total unpaid wages.  See N.Y. Lab. Law §§ 198(1-a), 663(1) (effective Apr. 9, 2011); Gonzalez v. Masters Health Food Serv. Inc., No. 14 Civ. 07603 (VEC), 2017 WL 3835960, at *18 (S.D.N.Y. July 27, 2017).  For purposes of calculating liquidated damages, unpaid wages includes unpaid spread-of-hours pay.  See Cazarez v. Atl. Farm & Food Inc., No. 15 Civ. 2666 (CBA) (RML), 2017 WL 3701687, at *8 (E.D.N.Y. May 31, 2017), R&R adopted, No. 15 Civ. 2666 (CBA) (RML), 2017 WL 3701479 (E.D.N.Y. Aug. 25, 2017).

Here, Defendants have failed to establish a good-faith basis for having failed to pay the required wages.  Although Defendant Phimploy Likitsansook declared that she did not "fully

27

understand the requirements of FLSA and NYLL" and always "endeavor[ed] to pay all [her] employees above minimum wage and overtime," Defendants made no showing that they took active steps to endeavored what the Act requires. Moreover, the fact that the wage statements occasionally included line items listing pay for overtime and spread of hours pay, see generally Pl. Ex. 1, suggests that Defendants were aware of these concepts. Accordingly, Plaintiff is entitled to liquidated damages equaling 100% of the total unpaid wages, including unpaid spread-of-hours pay, totaling $28,062.87.

### vi. Pre-judgment Interest

The NYLL permits the award of both liquidated damages and pre-judgment interest. See Begum, 2015 WL 223780, at *3. This dual availability occurs because New York State views liquidated damages as punitive, and not compensatory, such that pre-judgment interest is not a duplicative damages award. See Janus v. Regalis Const., Inc., No. 11 Civ. 5788 (ARR) (VVP), 2012 WL 3878113, at *8-9 (E.D.N.Y. July 23, 2012), R&R adopted, No. 11 Civ. 5788 (ARR), 2012 WL 3877963 (E.D.N.Y. Sept. 4, 2012) (explaining that liquidated damages under the NYLL are meant to "constitute a penalty" on an employer's willful withholding of wages due, whereas pre-judgment interest is meant "to compensate a plaintiff for the loss of use money"); Santillan v. Henao, 822 F. Supp. 2d 284, 297 (E.D.N.Y. 2011) (quoting Reilly v. Natwest Mkts. Group Inc., 181 F.3d 253, 265 (2d Cir. 1999)).

The availability of both NYLL liquidated damages and pre-judgment interest "remains true even where liability is found not only under the NYLL but also under the FLSA." Begum, 2015 WL 223780, at *3 (citing Thomas v. iStar Fin., Inc., 652 F.3d 141, 150 n.7 (2d Cir. 2011)).

Prejudgment interest is calculated based on a plaintiff's "NYLL unpaid minimum, overtime and spread of hours wage claims (that do not overlap with FLSA recovery)." Baltierra

v. Advantage Pest Control Co., No. 14 Civ. 5917 (AJP), 2015 WL 5474093, at *12 (S.D.N.Y.

Sept. 18, 2015).  Interest is calculated at a statutory rate of nine percent per year.  N.Y. C.P.L.R.

§ 5004.  It is calculated "from the earliest ascertainable date the cause of action existed, except

that interest upon damages incurred thereafter shall be computed from the date incurred.  Where

such damages were incurred at various times, interest shall be computed upon each item from the

date it was incurred or upon all of the damages from a single reasonable intermediate date."

N.Y. C.P.L.R. § 5001.

Here, Plaintiff's cause of action accrued on Plaintiff's first day of work, but damages

continued to increase throughout Plaintiff's employment.  Accordingly, the Court will adopt the

reasonable intermediate date approach.  Because Plaintiff worked at 8 Paet Rio from

approximately September 1, 2014 through November 20, 2015, see Section III(b), the midpoint

for the purposes of NYLL pre-judgment interest calculations is April 12, 2015.  Accordingly,

because nine percent of $28,062.87 ($25,575 + $2,487.87) is $2,525.66, and there are 365 days

in a year, Plaintiff is entitled to recover $6.92 per day ($2,525.66/365) from April 12, 2015 until

the date judgment is entered.[12]

### vii.  Post-Judgment Interest

Plaintiff is entitled to post-judgment interest pursuant to 28 U.S.C. § 1961.  See Blue v.

Finest Guard Servs., Inc., 09 Civ. 133 (ARR), 2010 WL 2927398, at *13 (E.D.N.Y. June 24,

2010) (awarding post-judgment interest on an FLSA- and NYLL-based default judgment);

Pereira v. J. Sister Hair Care Prods., Inc., 08 Civ. 4537 (GBD) (RLE), 2010 WL 2194808, at *4

---

[12] "'It is well settled that in an action for violations of the [FLSA] prejudgment interest may not be awarded in addition to liquidated damages.' Begum v. Ariba Disc., Inc., No. 12 Civ. 6620 (DLC), 2015 WL 223780, at *3 (citing Brock v. Superior Care, Inc., 840 F.2d 1054, 1064 (2d Cir.1988)).  Because application of the NYLL results in a greater damages award in this case, this is of no consequence here.

(S.D.N.Y. Apr. 5, 2010), <u>R&R adopted</u>, 2010 WL 2194807, at *4 (S.D.N.Y. June 1, 2010)

(same).  This amount is calculated from the date of the entry of the judgment, at a rate equal to

the weekly average one-year constant maturity Treasury yield, as published by the Board of

Governors of the Federal Reserve System, for the calendar week preceding the date of the

judgment.  <u>See</u> 28 U.S.C. § 1961.  As per 28 U.S.C. §1961, "[i]nterest shall be allowed on any

money judgment in a civil case recovered in a district court."  28 U.S.C. § 1961(a).

> **viii.  Attorney's Fees and Costs**

The FLSA and the NYLL both provide for recovery of attorney's fees and costs in the

event of successful wage protection claims.  <u>See</u> 29 U.S.C. § 216(b); N.Y. Lab. L. § 198(4).

Plaintiff has not submitted evidence of actual attorney's fees or costs incurred, but Plaintiff may

file a motion for attorney's fees and costs.

**V.    CONCLUSION**

In light of the foregoing, Defendants are ordered to pay Plaintiff a total damages award of

$66,125.74, which includes $25,575 in unpaid overtime premiums, $2,487.87 in unpaid spread-

of-hours premiums, $5,000 in statutory damages for violating the wage notice provision of the

NYLL, $5,000 for violating the wage statement provision of the NYLL, and $28,062.87 in

liquidated damages, plus $6.92 per day from April 12, 2015 until the date judgment is entered in

pre-judgment interest under the NYLL.


Dated:  Brooklyn, New York
            September 30, 2017


_Vera M. Scanlon_
_____
            VERA M. SCANLON
        United States Magistrate Judge